### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEALERSOCKET, LLC and SOLERA GLOBAL HOLDING, LLC,<br><br>           Plaintiffs,<br><br>v.<br><br>EVOX PRODUCTIONS, LLC,<br><br>           Defendant. | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR DECLARATORY JUDGMENT

DealerSocket, LLC ("Plaintiff" or "DealerSocket") and Solera Global Holding, LLC ("Plaintiff" or "Solera") (collectively, the "Plaintiffs"), for their complaint against Evox Productions, LLC ("Defendant" or "Evox"), allege as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory judgment of non-infringement arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 ("Declaratory Judgement Act"), and the Copyright Act, 17 U.S.C. § 101, *et seq*. ("Copyright Act").

### THE PARTIES

2. DealerSocket is a Delaware limited liability company with a principal place of business in Westlake, Texas. DealerSocket is a leading provider of software solutions for the automotive industry. DealerSocket offers a comprehensive suite of tools designed to enhance dealership operations. These offerings include customer relationship management (CRM) systems, dealer management systems (DMS), inventory management, and digital retailing and marketing solutions.

3. DealerSocket is an indirect subsidiary of Solera, which is the global leader in

1

vehicle lifecycle management software-as-a-service (SaaS), data and services for the automotive, insurance, fleet and repair/claims ecosystems. Solera is also organized under the laws of Delaware and has a principal place of business in Westlake, Texas.

4. Upon information and belief, Evox is a Delaware limited liability company with its principal place of business located in Chino, California. On information and belief, Evox licenses its stock vehicle image library (the "Evox Image Library") to various third parties. DealerSocket is a former licensee. Upon information and belief, Evox has engaged in business in Delaware by, among other things, soliciting, distributing, or authorizing the disclosure of images, and selling or authorizing the sale of licenses of such images in this judicial district.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), the Copyright Act, 17 U.S.C. § 101, et seq., and the Declaratory Judgement Act, 28 U.S.C. §§ 2201–2202.

6. This Court has subject matter jurisdiction over this action based on a real and immediate controversy between the Plaintiffs and Evox concerning alleged copyright infringement arising from DealerSocket's purported public display, copying, and distribution of images from the Evox Image Library on eCarList.com. Additionally, there is an immediate controversy between Solera and Evox concerning whether Solera should be held responsible for DealerSocket's alleged infringement because Solera allegedly ignored corporate formalities.

7. This Court has personal jurisdiction over Evox because it is incorporated in Delaware.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a) because Evox is incorporated in Delaware and is thus a resident of Delaware.

## FACTUAL ALLEGATIONS

### DealerSocket/Evox License Agreement

9. Evox's infringement allegations arise from images used in listings for vehicles for sale on eCarList.com. On information and belief, most (if not all) of the images in these listings were posted over a decade ago and by companies other than DealerSocket or Solera. On information and belief, the vehicle listings subject to Evox's allegations were posted to eCarList.com by earlier Evox licensees, eCarList, LLC and DealerTrack Inc.

10. On information and belief, on or about 2009, Evox entered into a license agreement with eCarList, LLC for the "eVox Automotive Image Library, U.S. Edition" and the "eVox Automotive Video Library, U.S. Edition." On information and belief, eCarList, LLC provided automotive dealers with website design and hosting services in which the dealer's vehicle inventory was displayed on vehicle detail pages ("VDPs") hosted on eCarList.com. These VDPs included photos and information specific to a vehicle listed for sale in the dealer's inventory. On information and belief, the dealer's website and inventory management system were integrated with eCarList.com such that VDPs were automatically generated based on the dealer's current inventory. On information and belief, when a dealer did not supply its own photographs of a particular vehicle, the system automatically selected and populated stock images licensed from Evox for use on the VDP based on the vehicle's VIN, which is commonly referred to in the industry as "VIN-Specific Advertising."

11. On information and belief, on or about July 1, 2011, DealerTrack Inc. acquired substantially all the assets of eCarList, LLC. On information and belief, DealerTrack transitioned its customers from the eCarList.com domain to its Inventory Plus product by redirecting the eCarList.com domain to inventoryplus.dealertrack.com. This is shown by the screenshot below

from archive.org showing a redirect from eCarList.com to inventoryplus.dealertrack.com during this time period:



12. Upon this acquisition, on information and belief, Evox continued to provide DealerTrack Inc. with access to the stock images that it had been providing to eCarList, LLC, and then entered into a written license agreement with DealerTrack Inc. on June 28, 2013 (the "DealerTrack License") for Evox's images.

13. On or about October 1, 2015, DealerSocket purchased certain assets of DealerTrack Inc. These assets included the eCarList.com website and DealerTrack's Inventory Plus software product line. As part of the agreement, DealerSocket assumed all obligations of the DealerTrack License, including paying license fees to Evox. Thereafter, DealerSocket paid all license fees due to Evox pursuant to the DealerTrack License until the license terminated.

14. After the acquisition, in October 2015, DealerSocket sought to transition customers to its newly purchased Inventory Plus product line. Accordingly, DealerSocket changed the

inventoryplus.dealertrack.com domain (the eCarList.com domain had previously been redirected to inventoryplus.dealertrack.com after DealerTrack Inc. acquired eCarList, LLC) to automatically forward to its own domain, inventoryplus.dealersocket.com. This is shown by the archive.org screenshot below showing that http://inventorplus.dealertrack.com redirected to http://inventoryplus.dealersocket.com/ during this time period:



15. On or about December 12, 2016, DealerSocket notified Evox that it sought to terminate the DealerTrack License at the end of the current renewal term. DealerSocket's letter is attached as Exhibit A. On information and belief, the DealerTrack License expired on January 31, 2017.

16. On or around the time the DealerTrack License expired, DealerSocket turned the www.eCarList.com webpage to a blank page, as shown by the archive.org screenshot below. The www.eCarList.com webpage remains a blank page to this day.



**Evox Copyright Infringement Allegations**

17. Evox did not raise any copyright infringement allegations until over 5 years after the January 31, 2017 termination of the DealerTrack License. On September 7, 2022, Evox sent a cease and desist letter to DealerSocket alleging infringement of 132,923 images (the "First Accused Images"). This letter included a spreadsheet itemizing webpage URLs of various VIN-Specific Advertising on eCarList.com that were generated, on information and belief, during the term of the DealerTrack License and for which DealerSocket (and/or eCarList, LLC and/or DealTrack Inc.) have already paid separate VIN-Specific Advertising license fees. Evox asserted statutory damages "at a minimum" of $99,692,250. Evox's letter (without attached spreadsheet) is attached as Exhibit B. In a response letter on October 7, 2022, DealerSocket denied any infringement. (*See* Exhibit C).

18. After not responding for over a year, Evox responded on March 4, 2024. (*See* Exhibit D). This time, Evox alleged infringement of 108,907 images. Again, Evox pointed to

6

webpage URLs from various VIN-Specific Advertising on eCarList.com that were generated, on information and belief, during the term of the DealerTrack License.

19. In May 2025, Evox alleged infringement of 188 so-called "banner advertisements" appearing on eCarList.com that allegedly include Evox's images (the "Accused Banner Ads"). (*See* Exhibit E). Although Evox labels these images as "banner ads," they are not banner advertisements. A "banner ad" is a paid advertisement for a third-party advertiser that may appear in various locations on a webpage and is intended to drive users to an *external* website. In contrast, the Accused Banner Ads are hero banners – large, static images placed at the top of the dealer's website to identify and promote the dealer itself.

20. As discussed herein, prior to DealerSocket's asset purchase agreement with DealerTrack in 2015, DealerTrack had already transitioned consumers from eCarList.com to inventoryplus.dealertrack.com, and then DealerSocket redirected that domain to inventoryplus.dealersocket.com. Accordingly, on information and belief, the Accused Banner Ads were uploaded to eCarList.com on or before 2015 prior to DealerSocket's asset purchase from DealerTrack. Regardless, on information and belief, the Accused Banner Ads were created and uploaded by the individual dealers to brand and promote their own websites, without any oversight or involvement by DealerSocket.

21. In June 2025, Evox alleged infringement of an additional 559,781 images (the "Second Accused Images"). (*See* Exhibit F).[1] Unlike the allegations regarding the First Accused Images, Evox did not identify any webpage URLs on eCarList.com from which these images could be accessed, but only identified image-specific URLs, which are URLs that each point to only a single image file – not a webpage. On information and belief, the image-specific URLs concerning

---

[1] Evox's letter is erroneously dated February 11, 2025, but was actually sent on June 13, 2025.

Evox's Second Accused Images were not publicly known and none of the Second Accused Images have appeared on any website on eCarList.com.

22. On information and belief, Evox continued to deliver images to DealerSocket via FTP after the DealerTrack License terminated. On information and belief, any Evox images appearing on webpage URLs from eCarList.com dated after the DealerTrack License terminated were automatically created from DealerSocket's inventory management system based on Evox's own conduct.

23. All total, Evox seeks damages of at least approximately $520 million for the First Accused Images, Second Accused Images, and Accused Banner Ads (collectively, the "Accused Evox Images") based on Evox's contention that it is a violation of its "public display" right under 17 U.S.C. § 106(5) for the Accused Evox Images to be *potentially* visible to the public, even if the images were not actually displayed on any occasion after termination of the DealerTrack License. Moreover, the statutory damages amount asserted by Evox incorrectly presumes that each of the Accused Evox Images constitutes a separate statutory damages award.

24. After Evox's March 4, 2024 letter, DealerSocket and Evox entered into a tolling agreement effective March 1, 2024 (the "Tolling Agreement"). (*See* Exhibit G). DealerSocket and Evox agreed to extend the Tolling Agreement multiple times. Most recently, on July 22, 2025, DealerSocket and Evox extended the Tolling Agreement to give DealerSocket time to review the new allegations of June 13, 2025 regarding the Second Accused Images. The most recent amendment to the Tolling Agreement extended the Tolling Period to the "earlier of (a) December 2, 2025; or (b) thirty (30) days after the conclusion of a private mediation to resolve the Claims." (*See* Exhibit H). This amendment acknowledged that "the parties have not concluded a private mediation to resolve the Claims."

25. Despite extending the Tolling Agreement until December 2, 2025, Evox filed a lawsuit on October 28, 2025 against DealerSocket and Solera, among other parties, for infringement of the Accused Evox Images in the Central District of California (the "Previous Lawsuit"). In this lawsuit, Evox sought to hold Solera responsible for DealerSocket's alleged infringement of the Accused Evox Images for failing to follow corporate formalities with regard to DealerSocket. After DealerSocket notified Evox that this lawsuit breached the Tolling Agreement, Evox agreed to voluntarily dismiss this lawsuit on October 30, 2025. (*See* Exhibit I).

26. In the Previous Lawsuit, Evox made several allegations "on information and belief" regarding the relationship between DealerSocket and Solera that are incorrect. Evox incorrectly alleged in the Previous Lawsuit that DealerSocket and Solera comingle funds and other assets. DealerSocket and Solera avoid commingling funds or transferring funds or assets in a manner inconsistent with an arm's length corporate practice. DealerSocket maintains books, records, and bank accounts separate from Solera.

27. In the Previous Lawsuit, Evox incorrectly alleged that there is identical equitable ownership of the two entities. DealerSocket is a wholly owned subsidiary *indirectly* controlled by Solera. There are multiple intermediate companies between DealerSocket and Solera in the corporate structure.

28. Evox made multiple allegations in the Previous Lawsuit regarding its theory that Solera should be responsible for DealerSocket's actions based on co-branding in website advertising, but this is a routine and legitimate corporate marketing strategy to maintain a consistent consumer-facing identity that does not erase the legal separation between these entities.

29. Evox's allegations in the Previous Lawsuit also incorrectly assert that DealerSocket is a mere shell and conduit of Solera that is not adequately capitalized. Solera is not directly

involved in DealerSocket's operational conduct and does not exercise the type of complete dominion or control necessary for veil-piercing. Moreover, Evox's allegations in the Previous Lawsuit do not evaluate whether veil-piercing is appropriate as to the intervening entities between Solera and DealerSocket, each of which require a separate veil-piercing analysis.

## COUNT I

### (Declaratory Judgment of No Copyright Infringement)

30.     Plaintiffs incorporate by reference the allegations set forth above in this Complaint as if fully set forth herein.

31.     This is a declaratory judgment claim arising under the Copyright Act, 17 U.S.C. § 501 *et seq*., and the Declaratory Judgment Act, 28 U.S.C. § 2201(a). An actual justiciable controversy exists between the Parties based on the credible threat of a copyright infringement lawsuit and the allegations made regarding the allegedly infringing conduct of DealerSocket with regard to the Accused Evox Images. Separately, there is an immediate, actual controversy that exists between Solera and Evox concerning whether Evox should be allowed to pierce the corporate veil and hold Solera responsible for the allegedly infringing conduct of DealerSocket with regard to the Accused Evox Images.

32.     Plaintiffs are entitled to declaratory relief in the form of a judgment that Plaintiffs are not liable for infringement of the Accused Evox Images for any and all such images that have not actually been viewed by members of the public after the DealerTrack License terminated.

33.     Alternatively, Plaintiffs are entitled to declaratory relief in the form of a judgment that Plaintiffs are not liable for infringement of the Accused Evox Images because Evox is barred by the statute of limitations per 17 U.S.C. § 507(b) because Evox's infringement allegations accrued more than 3 years prior to entering into the Tolling Agreement. As noted above, the

DealerTrack License terminated on January 31, 2017 and the Tolling Agreement is effective as of March 1, 2024.  On information and belief, Evox knew or should have known of the alleged infringement prior to March 1, 2021 (three years before the Tolling Agreement's effective date), particularly given that's over 4 years post-termination of the DealerTrack License and Evox alleges violation of its "public" display right.

34.     Alternatively, Plaintiffs are entitled to declaratory relief in the form of a judgment that Plaintiffs are not liable for infringement of the Accused Evox Images because Evox acquiesced to use of Accused Evox Images by making these images available to DealerSocket on its FTP site after the DealerTrack license terminated, and Evox is estopped from asserting infringement of those images based on its own conduct.  Specifically, Evox's continued authorization and approval of DealerSocket's access credentials to Evox's FTP site for years after the DealerTrack license terminated caused DealerSocket's automated scripts to continue downloading Evox images post-termination of the DealerTrack License.

35.     Additionally, Solera is entitled to declaratory relief in the form of a judgment that Solera should not liable for any allegedly infringing conduct of DealerSocket with regard to the Accused Evox Images.

## PRAYER FOR RELIEF

WHEREFORE, DealerSocket and Solera respectfully requests judgment be entered in its favor and  against Evox as follows:

1.     For judgment in favor of DealerSocket and Solera against Evox on all claims.

2.     A declaration that Plaintiffs do not infringe any valid copyright in the Accused Evox Images.

3.     A declaration that Solera is not responsible for any allegedly infringing conduct of

DealerSocket with regard to the Accused Evox Images.

4. An award to Plaintiffs of costs and expenses of suit, and reasonable attorney's fees, expert witness costs, and any other such relief as the Court deems necessary and proper after trial of this matter.

5. Such other relief as the Court deems just and proper.

Dated:  December 3, 2025   **BARNES & THORNBURG LLP**

*/s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Tel:  (302) 300-2474
Fax: (302) 300-3456
chad.stover@btlaw.com

*Attorneys for DealerSocket, LLC and Solera Global Holding, LLC*